```
            UNITED STATES DISTRICT COURT
                      FOR THE
               DISTRICT OF VERMONT
```

```
Elizabeth and Matthew Moffitt,    :
          Plaintiffs,             :
                                  :
          v.                      :    File No. 1:04-CV-115
                                  :
Icynene, Inc. and                 :
Nicholas Krywka, d/b/a            :
Environmental Foam of Vermont,    :
and Environmental Foam of         :
Vermont, Inc.,                    :
          Defendants.             :
```

## MAGISTRATE JUDGE'S REPORT & RECOMMENDATION
### (Documents 41, 43, 44 and 46)

Plaintiffs Elizabeth and Matthew Moffitt ("Moffitts")
bring this action to recover for moisture damage in their
vacation home allegedly caused by the insulation.  They have
made claims against the manufacturer of the insulation,
Icynene, Inc. ("Icynene"), the dealer/installer, Nicholas
Krywka d/b/a Environmental Foam of Vermont, and
Environmental Foam of Vermont, Inc. (collectively
"Environmental Foam" or "Krywka").  The Moffitts' claims are
based in negligence, consumer fraud, and breach of the
implied warranties of merchantability and fitness for a
particular purpose.

Presently before the court are Icynene's motion for
summary judgment and the Moffitts' motions for partial

summary judgment and motion *in limine* to exclude the expert testimony of William Savage.

For the reasons set forth below, I recommend that Icynene's motion for summary judgment (Doc. 46) be GRANTED in part and DENIED in part.  I recommend that the Moffitts' motions for partial summary judgment (Docs. 41, 43, and 44) be GRANTED in part and DENIED in part.  I also recommend that the Moffitts' motion *in limine* be DENIED.

<u>FACTUAL BACKGROUND</u>

Icynene is a Canadian corporation with its corporate headquarters and principal place of business in Mississauga, Ontario. (Doc. 31, ¶ 2).  Icynene manufactures open-cell foam insulation under the trademark "Icynene."  (Doc. 42, Ex. 3, ¶¶ 1-3).  It sells the component chemicals to trained independent dealers who install the insulation.  <u>Id.</u>

Environmental Foam is a Vermont corporation located in Jericho, Vermont and owned by Nicholas Krywka.  (Doc. 47, ¶ 5).  Environmental Foam is a licensed Icynene dealer.  (Doc. 42, ¶ 3).  In addition to Icynene brand insulation, Environmental Foam also sells and installs closed-cell polyurethane insulating foam.  (Doc. 47, ¶ 5).

The Moffitts are residents of New Jersey.  (Doc. 47,

¶ 1).  In 1999, they purchased land in Warren, Vermont on which they planned to build a house.  (Doc. 47, ¶ 2).  To this end, the Moffitts purchased a pre-fabricated 12' by 18' cabin.  (Doc. 47, ¶ 3).  The Moffitts have experience in the construction trade and knew that they wanted to insulate the cabin with polyurethane foam.  (Doc. 71, Ex. C Deposition of Matthew Moffitt ("Mr. Moffitt Depo.") at 19, 149; Doc. 71, Ex. I Deposition of Elizabeth Moffitt ("Mrs. Moffitt Depo.") at 18-22, 83).  Mr. Moffitt hired Environmental Foam to install the insulation.   (Doc. 47, ¶6).  In October 2000 when Krywka arrived to install the insulation, Mr. Moffitt noticed the Icynene label and questioned Krywka about it. (Mr. Moffitt Depo. at 32).  According to Mr. Moffitt, Krywka told him that Icynene was not polyurethane but was an equivalent product that would do the same job.  (Id. at 52). According to Krywka, he and Mr. Moffitt discussed the difference in heat loss between Icynene and polyurethane foam.  (Doc. 42, Ex. I Deposition of Nicholas Krywka ("Krywka Depo.") at 41-44).  Krywka claims that he explained that Icynene would not function as a vapor barrier[1] and that the Moffitts would not need to apply a vapor barrier with

---

[1]A vapor barrier, or vapor retarder, slows the transfer of vapor without stopping the transfer of heat. (Doc. 42 ¶ 7).

Icynene provided they kept the indoor humidity to 30-35%.
(Id.).  Krywka installed the Icynene in the walls and
ceiling of the Moffitts' house.  (Doc. 42, ¶ 5).  Mr.
Moffitt did not ask for a vapor barrier and Krywka did not
install one.  (Id. at ¶¶ 14, 21).

The conditions that necessitate using a vapor barrier
with Icynene insulation are in dispute.  A 1994 study by the
National Association of Home Builders ("NAHB") recommends
using a vapor barrier with Icynene insulation in climates
with 7,500 or more heating degree days[2] ("HDD").  (Doc. 42,
¶ 11).  According to Krywka, during his Icynene training in
1997, Icynene's Chief Engineer Gabe Farkas advised the
trainees that the NAHB study only applies to structures with
vapor drive conditions such as indoor swimming pools or hot
tub rooms that have high humidity.  (Doc. 71, Ex. J
Affidavit of Nicholas Krywka ("Krywka Aff."), ¶ 3).  There
is no mention of the 7,500 HDD standard in the 1997 Icynene
training manual.  (Id. at ¶ 5; Doc. 71, Ex. F Deposition of
Gabe Farkas ("Farkas Depo.") at 49).  The Icynene 2000

---

[2]"Heating degree days are used to estimate how cold the climate is and how
much energy may be needed to keep buildings warm. HDDs are calculated by
subtracting the mean daily temperature from a balance temperature, and summing
up only positive values over an entire year." U.S. Environmental Protection
Agency, Heat Island Effect Glossary, http://www.epa.gov/heatisland/resources/
glossary.html.

training manual references the NAHB study and recommends using a vapor barrier in climates with at least 8,000 HDD. (Doc. 42, ¶ 3).  A 2003 Icynene specification sheet recommends using a vapor barrier in climates with 7500 HDD or more.  (Id. at Ex. 3).  Icynene has also recommended using of a vapor barrier in climates over 9000 HDD if there are vapor drive conditions.  (Doc. 71, Ex. J).

During the winter of 2001-2002, Mrs. Moffitt noticed that the walls of the cabin were damp in certain places and that there was mildew on some of the paneling in her son's room.  (Mr. Moffitt Depo. at 115; Mrs. Moffitt Depo. at 54).  In October 2002, Mr. Moffitt discovered some of the interior paneling was warped and "popping off."  (Mr. Moffitt Depo. at 115, 160).  Again, in the winter of 2002-2003, they noticed the dampness and mildew.  (Mrs. Moffitt Depo. at 54-55, 73).  In 2004, the Moffitts cut into the walls of the cabin to find the source of the excess moisture.  (Id. at 72; Mr. Moffitt Depo. at 126).  They discovered that the insulation was saturated and even frozen in some areas. (Id.).  It was then that the Moffitts suspected that the insulation was causing their moisture problems.  (Mr. Moffitt Depo. at 160-161).

The Moffitts have asserted four claims against both Icynene and Krywka.  First, they allege that Icynene and Krywka breached the implied warranties of merchantability and fitness for a particular purpose under Vermont's Uniform Commercial Code ("UCC").  The Moffitts also seek to recover for these alleged breaches under the Magnuson-Moss Warranty - Federal Trade Commission Improvement Act ("MMWA"), 15 U.S.C. § 2310(d).  Third, the Moffitts claim that Icynene and Krywka engaged in unfair and/or deceptive business practices in violation of Vermont's Consumer Fraud Act ("VCFA").  Finally, the Moffitts allege that Icynene and Krywka were negligent in supplying and installing the insulation.

Icynene has moved for summary judgment on all counts. The Moffitts have moved for partial summary judgment that (1) they are "consumers" within the meaning of the Vermont Consumer Fraud Act, (2) they are "owners" not "contractors," (3) defendants are liable for consumer fraud, and (4) defendants are liable for breach of the implied warranty of merchantability.  The Court held a hearing on November 1, 2005.

STANDARD OF REVIEW

Summary judgment should be granted when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law," Fed. R. Civ. P. 56(c), or "'[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" Konikoff v. Prudential Ins. Co. of Am., 234 F.3d 92, 97 (2d Cir. 2000) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law.'" O'Hara v. Weeks Marine, Inc., 294 F.3d 55, 61 (2d Cir. 2002) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). An issue of fact is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

The moving party bears the initial burden of showing an absence of any genuine issue of material fact. Celotex Corp. V. Catrett, 477 U.S. 317, 322 (1986). Once that burden is met, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(c). "When determining whether there is

a genuine issue of fact to be tried, the court must resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought." Winter v. United States, 196 F.3d 339, 346 (2d Cir. 1999)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).  As to any claim or essential element for which the non-moving party bears the burden of proof at trial, the non-moving party must make a showing sufficient to establish the existence of that claim or element.  Tops Mkts., Inc. v. Quality Mkts., Inc., 142 F.3d 90, 95 (2d Cir. 1998)(citing Celotex, 477 U.S. at 324; DiCola v. Swissre Holding, Inc., 996 F.2d 30, 32 (2d Cir. 1993)).  "Credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment."  Fischl v. Armitage, 128 F.3d 50, 55 (2d Cir. 1997).

DISCUSSION

I. Icynene's Motion for Summary Judgment

     Icynene contends that all claims against them should be dismissed.  First, Icynene asserts that the Moffitts lack privity with Icynene and therefore cannot recover under an implied warranty theory.  Second, Icynene argues that the

8

consumer fraud claim fails because Icynene never made any representations about its product to the Moffitts, and the Moffitts did not rely on any representations by Icynene. Third, Icynene contends that the Moffitts cannot recover in tort for their economic losses.

A. <u>Breach of Implied Warranty Under Vermont's UCC</u>

1. Privity

Icynene argues that privity is required for a consumer to recover for economic losses or property damage under an implied warranty.  The Moffitts argue that privity is not required, and alternatively, if it is required, Icynene's express warranty creates that privity.

As discussed more fully below, the Moffitts suffered damage to other property.  This Court and the Second Circuit have both concluded that privity is not required for a remote buyer to recover for property damage.  <u>Vermont Plastics, Inc. v. Brine, Inc.</u>, 824 F. Supp. 444, 453 (D. Vt. 1993), <u>aff'd</u>, 79 F.3d 272, 280 (2d Cir. 1996); <u>Mainline Tractor & Equipment Company, Inc. v. Nutrite Corp.</u>, 937 F. Supp. 1095, 1106 n.9 (D. Vt. 1996).

In <u>Vermont Plastics</u>, the issue was whether the Vermont UCC allows the recovery of economic losses under a theory of

9

implied warranty if there is no privity between the commercial parties.  824 F. Supp. at 452.  This Court reviewed the Vermont case law and found a "trend toward dispensing with the privity requirement."  Id.  This Court resolved that "the Vermont Supreme Court has dispensed with privity when personal injury, property damage, or an express warranty made directly from the defendant to the plaintiff is present."  Id. at 453.  The Second Circuit approved this conclusion and noted this Court's "thorough review of the case law."  79 F.3d at 280.  In Mainline Tractor, this Court engaged in a similar review of Vermont case law to determine whether privity is required for a remote consumer to recover economic losses from the commercial seller under the theory of express or implied warranty.  937 F. Supp. at 1105-1108.  Again, this Court noted that "Vermont has also abandoned the privity requirement in property damage cases."  Id. at 1106 n.9.  Icynene argues that Vermont Plastics was wrongly decided and that Vermont still requires privity to recover for property damage.  Without a decision from Vermont's Supreme Court on this issue, this Court adheres to the existing case law and its interpretation of Vermont law.  Therefore, privity is not required for the Moffitts to

recover for property damage under a theory of implied warranty.

2. Implied Warranty of Merchantability

Icynene argues that there is no evidence that the insulation was (1) not merchantable, and (2) caused the moisture damage to the Moffitts' home.

According to the UCC, a product is merchantable if it is "fit for the ordinary purposes for which such goods are used."[3]  This warranty is "primarily directed at the operative essentials of a product. It is not intended to guarantee high quality or perfection of detail." Tracy v. Vinton, 130 Vt. 512, 516 (1972).  The warranty of merchantability under the UCC is equivalent to strict product liability.  Adel v. Greensprings of Vermont, Inc., 363 F. Supp. 2d 692 (D. Vt. 2005).  Vermont has adopted the strict product liability principles found in Restatement (Second) of Torts § 402A.  Zaleskie v. Joyce, 133 Vt. 150, 155 (1975).  Hence, establishing a breach of this warranty

---

[3]The full text of T.9A § 2-314(2) reads: "Goods to be merchantable must be at least such as (a) pass without objection in the trade under the contract description; and (b) in the case of fungible goods, are of fair average quality within the description; and (c) are fit for the ordinary purposes for which such goods are used; and (d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved, and (e) are adequately contained, packaged, and labeled as the agreement may require; and (f) conform to the promises or affirmations of fact made on the container or label if any."

requires showing a defect in the product and causation.
Vermont Food Industries, Inc. v. Ralston Purina Co., 514
F.2d 456, 462 (2d Cir. 1975)(finding sufficient evidence of
a defect and causation to sustain verdict holding defendant
liable for breach of implied warranty of merchantability).
Moreover, the product defect must have existed when the
product left the defendant's control.  Restatement (Second)
of Torts § 402A cmt. g (1965).

The Moffitts argue that a vapor barrier is a necessary
component of Icynene in cold climates and therefore the
insulation in their home was defective.  However, as
discussed above, it is not clear under what conditions
Icynene requires a vapor barrier.  The parties agree that
the 1994 NAHB study recommended using a vapor barrier in
climates with more than 7500 HDD.  Icynene admits that this
information was not included in the 1997 training manual.
Moreover, Krywka asserts that according to his Icynene
training in 1997, the NAHB recommendation only applies when
there is high humidity.  Icynene's 2000 manual recommends a
vapor barrier for climates with more than 8000 heating
degree days, regardless of humidity, but it is not clear
when this manual was published.  (Farkas depo. at 49).

12

Resolving these ambiguities in favor of the Moffitts, there is a factual dispute whether the insulation was defective based on when Icynene required a vapor barrier. Accordingly, summary judgment is not appropriate.

3. Implied Warranty of Fitness for a Particular Purpose

Icynene argues that it did not warranty that its insulation was fit for the Moffitts' particular purpose. According to the UCC, the implied warranty of fitness for a particular purpose arises "where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods...." T.9A § 2-315. It is undisputed that the Moffitts did not communicate with Icynene prior to the installation of the insulation. (Doc. 47, ¶ 7). It is also undisputed that Icynene made no representations to the Moffitts concerning the use of Icynene insulation for their particular needs. (Id. at ¶ 9). Therefore, as a matter of law there is no implied warranty of fitness for a particular purpose between the Moffitts and Icynene, and that claim should be dismissed.

13

4. Express Warranty

The Moffitts also argue that if privity is required for their implied warranty claims, privity exists by virtue of Icynene's express warranty.  Icynene disputes that there is an express warranty for the Moffitts' purchase in 2000. Icynene argues that the Moffitts are improperly relying on a 2003 warranty that they received through discovery in this case.

Since privity is not required for the Moffitts' implied warranty claims against Icynene, the court declines to address the express warranty arguments.

B. Breach of Warranty Under Magnuson-Moss Warranty Act

The MMWA creates a right of action for consumers who are "damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract...."  15 U.S.C. § 2310 (d)(1).  Liability under the MMWA is predicated on state warranty law. "[E]xcept in the specific instances in which Magnuson-Moss expressly prescribes a regulating rule, the Act calls for the application of state written and implied warranty law, not the creation of additional federal law."  Walsh v. Ford

14

Motor Co., 807 F.2d 1000, 1012 (C.A.D.C. 1986); 59 A.L.R. Fed. 461 n.10 ("This provision [15 U.S.C.A. § 2310(d)] has not only provided a means of enforcing the substantive requirements of the Act, but also has established a federal cause of action for breach of an implied warranty which has arisen under state law even if no written warranty was involved."). Therefore, because the Court has not dismissed the implied warranty claim against Icynene under the Vermont UCC, the Moffitts may still recover under the MMWA.

      C. Vermont Consumer Fraud Act

Icynene argues that the Moffitts cannot prove the necessary elements of a consumer fraud claim. The Moffitts do not dispute that they had no communication with Icynene prior to the installation of the insulation and therefore did not rely on any representations by Icynene about the insulation. Accordingly, they have withdrawn the consumer fraud claim against Icynene.

      D. Negligence

The Moffitts claim that Icynene and Krywka negligently supplied and installed the insulation. Icynene argues that the Moffitts have only suffered economic losses, which cannot be recovered in tort. Icynene argues alternatively

15

that it cannot be held vicariously liable for the alleged
negligent conduct of Krywka.

1. Economic Loss

Icynene argues that the Moffitts' negligence claim is
barred because they cannot recover in tort for economic
losses associated with the repair and replacement of the
insulation including travel costs, lost wages and loss of
enjoyment.  The Moffitts contend that the claim is not
barred because they are also seeking recovery for property
damage to the walls and paneling in the cabin caused by the
excess moisture.

In tort law a defendant has no duty to "'exercise
reasonable care to avoid intangible economic loss to another
unless one's conduct has inflicted some accompanying
physical harm,' which does not include economic loss." Gus'
Catering, Inc. v. Menusoft Systems, 171 Vt. 556, 558 (2000)
(quoting O'Connell v. Killington, Ltd., 164 Vt. 73 (1995));
City of Burlington v. Zurn Industries, Inc., 135 F. Supp. 2d
454, 461 (D. Vt. 2001); Wentworth v. Crawford and Co., 174
Vt. 118, 126 (2002).  Economic loss generally includes any
damages "other than physical harm to persons or property."
Springfield Hydroelectric, 172 Vt. at 315 (quoting Town of

16

<u>Alma v. AZCO Constr., Inc.</u>, 10 P.3d 1256, 1264 (Colo. 2000)).  For example, a plaintiff cannot recover in tort for "disappointed commercial expectations" such as "loss of business profits, customers, and time." <u>Gus' Catering</u>, 171 Vt. at 558-59 (relying on Note, *Economic Loss in Products Liability Jurisprudence*, 66 Colum. L.Rev. 917, 918 (1966)(defining economic loss as "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits - without any claim of personal injury or damage to other property.")).  In <u>Zurn Industries</u>, the City of Burlington sought to recover for the negligent installation of a boiler.  135 F. Supp. 2d at 461. This Court found that the City's damages were purely economic and therefore granted the defendants' motion for summary judgment.

> The City does not allege that any injury resulted from the boiler leaks other than the boiler itself. It does not allege that the boiler leaks...contributed to the damage of any other property. Therefore, because the City's negligence claims are based solely on the improper installation and construction of the boiler, the damages are strictly economic and are not recoverable under a negligence theory.

<u>Id.</u>

In this case, Icynene argues that the Moffitts are only

seeking replacement and inconvenience costs, which are economic damages that cannot be recovered in tort. The Moffitts argue that the moisture trapped in the insulation caused the house to be "dank and damp," and infested with carpenter ants. (Doc. 31, ¶ 12). The Moffitts claim that the damage to the house included water damage, mildew, and warped wall panels some of which "popped off." (Mr. Moffitt Depo. at 115, 121, 123, 125, 126, 160; Mrs. Moffitt Depo. at 53-54, 58). They further claim that their damages include the cost of the original insulation, fumigation, renovation, materials and other ancillary items. (Doc. 47, Ex. G). Icynene has not contested the actual damage to the Moffitts house, only the description of those damages. Resolving the ambiguities in favor of the Moffitts, the Court is persuaded that they are seeking to recover not only for the costs of replacing the insulation, but also for the cost of repairing the moisture damage to the house. Since the Moffitts seek to recover for physical damage to other property as a result of the negligent installation of the insulation and allege that the installation contributed to the damage, their negligence claim against Icynene is not barred.

2. Vicarious Liability

Icynene argues that even if the Moffitts negligence action is not barred, it is not vicariously liable for Krywka's conduct because he is a non-agent independent contractor.  The Moffitts argue that Icynene is vicariously liable based on the rule of <u>Morris v. American Motors Corp.</u>, 142 Vt. 566 (1983).

In <u>Morris</u>, the plaintiff sued the manufacturer and dealer of his car to recover for injuries he sustained when he tried to fix the engine.  <u>Id.</u> at 568-69.  The plaintiff's claim was based in product liability, negligence and breach of warranty.  <u>Id.</u> at 569.  The court evaluated the plaintiff's negligence claim as follows.  The standard of care for an automobile manufacturer is "to make its product carefully so that it is safe for its intended use." <u>Id.</u> at 573.  Accordingly, manufacturers have been held liable in negligence for any defects in the component parts manufactured by another when the plaintiff proved that the automobile manufacturer was "negligent in testing or inspecting the component before releasing the finished product on the market, or in failing to warn of latent defects in the product of which the seller is or should be

aware." Id.  Hence, the automobile manufacturer's liability was not vicarious, but grounded in its own conduct.  The court went on to recognize that "courts are increasingly holding such companies vicariously liable for the negligence of the makers of their components used in the assembled vehicle, without requiring any showing of a negligent act or omission by the car manufacturers themselves." Id.  This extension of liability "approaches strict liability" but still requires the plaintiff to show that the defect in the product was the result of some negligence – whether by the manufacturer of the component or the manufacturer of the final product.  Id.  Hence, the Morris court found that "if the [component] was defective, and that defect was the result of the component manufacturer's negligence, [the manufacturer of the final product] cannot avoid vicarious liability for it." Id. at 575.

The Moffitts argue that Icynene is liable for Krywka's conduct because Krywka completes the manufacture of the insulation by combining the component chemicals.  However, this theory inverses the vicarious liability applied in Morris.  If Icynene is the component manufacturer of the product that is completed by Krywka, then the Morris rule

would allow the Moffitts to hold Krywka vicariously liable for the negligence of Icynene.  <u>Morris</u> does not hold a non-negligent component manufacturer vicariously liable for the negligent conduct of the manufacturer of the final product.  <u>See also</u> <u>Cipollone v. Yale Industrial Products, Inc.</u>, 202 F.3d 376, 379 (1st Cir. 2000)("[T]he manufacturer of a component is liable only if the defect existed in the manufacturer's component itself.").

The Moffitts' characterization of the manufacturing relationship between Krywka and Icynene also undermines a traditional application of vicarious liability.  The rule of vicarious liability holds a principal liable for the conduct of its agent that is within the scope of the agency.  <u>Meyer v. Holley</u>, 537 U.S. 280, 285 (2003); <u>Anderson v. Toombs</u>, 119 Vt. 40, 44-45 (1955).  This rule applies to corporations as well as individuals.  <u>De Ronde v. Gaytime Shops, Inc.</u>, 239 F.2d 735, 738 (2d Cir. 1956) ("One corporation may act as agent for another, and if the agent, while acting within the scope of the agency, commits a tort, the principal will be held liable for it.").  "Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and

21

subject to his control, and consent by the other to so act."
Restatement (Second) of Agency § 1 (1958); Springfield
Hydroelectric Co. v. Copp, 172 Vt. 311, 72 (2001).
Accordingly, an independent contractor can still be an
agent.  Id. at § 14N.  See also Breslauer v. Fayston School
District, 163 Vt. 416, 425 (1995).  For example, an attorney
is an independent contractor because his physical conduct in
performing services is not subject to the control of his
employer.  Restatement (Second) of Agency § 14N cmt. a.
However, an attorney is an agent because, he is a
"fiduciar[y]; [he] owe[s] to the principal the basic
obligations of agency: loyalty and obedience."  Id.
Therefore, Icynene could be liable for the conduct of Krywka
if he is an agent of Icynene and his negligent conduct was
within the scope of his agency.

In Piper v. Oakland Motor Co., 94 Vt. 211 (1920), the
Vermont Supreme Court held: "If one buys goods of another to
sell on his own account, it is a purchase, and not an
agency...."  This rule was followed in Hendrickson v.
International Harvester Co. of America, 100 Vt. 161, 165
(1927), where the court found that the plaintiff who "bought
and sold the defendant's goods on his own account" was not

22

an agent but a purchaser.  The Second Circuit, relying on the Second Restatement of Agency came to the same conclusion where a defendant bought soap dishes from the plaintiff and "did not sell them on commission." <u>Hygienic Specialties Co. v. H.G. Salzman, Inc.</u>, 302 F.2d 614, 622-23 (2d Cir. 1962) (citing Restatement (Second) of Agency § 14J, cmts (a)-(e)).

According to the Restatement, "one who receives goods from another for resale to a third person is not thereby the other's agent in the transaction."  Restatement (Second) of Agency § 14J.  The Restatement provides the following factors as indications of a sale:  (1) buyer has legal title and possession, (2) buyer owes an agreed price either immediately or when the goods are sold, (3) buyer fixes the resale price with no duty to account for profits, (4) buyer has responsibility of completing the manufacture of goods, (5) buyer bears the risk of loss, (6) buyer is not an exclusive dealer, and (7) buyer sells goods as his own.  <u>Id.</u> at cmt. b (1)-(7).

The weight of this authority persuades the Court that Krywka is a purchaser of Icynene insulation, not Icynene's agent. As indicated above, the Moffitts argue that Icynene is liable for Krywka's conduct because Krywka is responsible

for completing the manufacture of Icynene.  The Restatement specifically refers to such a relationship as an indication of a sale, not agency.  Id. at cmt. b (4)("That the goods are incomplete or unfinished and it is understood that the transferee is to make additions to them or to complete the process of manufacture.").  Further, Krywka asserts that he buys the Icynene materials on his own account and is not paid any commissions or bonuses.  (Krywka Depo. at 33-36). This has not been disputed by the Moffitts.  Therefore, as a matter of law Icynene should not be vicariously liable for the conduct of Krywka.

II.  Moffitts' Motions for Partial Summary Judgment

    A. Vermont Consumer Fraud Act

The Moffitts argue that they are entitled to partial summary judgment against Krywka under the VCFA.  The VCFA protects the public from "unfair methods of competition and unfair or deceptive acts or practices."  Vt. Stat. Ann. tit. 9, § 2451.  The Vermont Supreme Court has prescribed three elements for proving liability for a deceptive act: (1) a representation or omission that is likely to mislead consumers, (2) the consumer reasonably interpreted the representation or omission under the circumstances, and (3)

the misleading representation was material to the consumer's decision. Jordan v. Nissan North America, Inc., 176 Vt. 465, 468 (2004).  A representation or omission is likely to mislead consumers if it "ha[s] the tendency or capacity to deceive a reasonable consumer." Id.  This is an objective test that requires evaluating the transaction in light of the "overall impression left by the defendants' communications." Id. at 469-470.  A representation or omission may violate the act even if only one of the possible reasonable interpretations is misleading.  Id. at 468.  Moreover, a defendant may be liable even if he lacks the intent to deceive or mislead.  Id.

(1) "Consumer"

Krywka agrees that the Moffitts are consumers as defined by the VCFA.  Vt. Stat. Ann. tit. 9, § 2415a(a).

(2) Liability

The Moffitts argue that Krywka is liable as a matter of law under the VCFA because he failed to disclose that a vapor barrier is necessary in climates with more than 7500 HDD.  Krywka claims that the information he gave the Moffitts was not misleading and that the omitted information was not material.

The Moffitts argue that Krywka's failure to disclose the 7500 HDD standard is deceptive as a matter of law because it is a material omission about the "nature and quality" of the insulation.  However, the court is not persuaded that this is the law in Vermont.  In L'Esperance v. Benware, 175 Vt. 292, 298 (2003), the Vermont Supreme Court affirmed a grant of summary judgment against the defendant under the VCFA because she had rented a house in violation of the housing health and safety codes.  Even though the defendant denied that she knew renting the house would violate the law, she rented the house to the plaintiffs despite a Department of Labor and Industry report that prohibited occupancy until the house complied with appropriate codes and passed inspection.  Id. at 299.  This conclusion was supported by Bisson v. Ward, 160 Vt. 343, 351 (1993), where a landlord was found liable under the VCFA for renting an apartment in violation of the law.  L'Esperance, 175 Vt. at 298.  In Peabody v. P.J.'s Auto Village, Inc., 153 Vt. 55, 58 (1989), the defendant was liable for failing to disclose to the buyer the actual condition of the used car.  The court found the defendant's omission to be a deceptive act based on a specific Federal Trade Commission

regulation that "[i]t is a deceptive act or practice for any used vehicle dealer, ... [t]o misrepresent the mechanical condition of a used vehicle...."  16 C.F.R. § 455.1(a)(1). The case at hand is factually distinct from these cases[4] because there is no suggestion or evidence that Krywka sold or installed a product that violated the law.  Therefore, whether Krywka's omissions were deceptive remains a disputed issue.

As discussed above, it is not clear what conditions require a vapor barrier to be used with Icynene insulation. Although the 2000 training manual includes a recommendation for climates with more than 8000 heating degree days, it is not clear whether that manual was published before Krywka installed the Moffitts' insulation.  (Farkas Depo. at 49). Nevertheless, Krywka admitted that he was familiar with the NAHB study, but that Icynene instructed its dealers that this recommendation only applied under conditions of high humidity.  Krywka further stated that he did not disclose the vapor barrier recommendation to Mr. Moffitt in terms of

---

[4]Poulin v. Ford Motor Company, 147 Vt. 120, 126 (1986) is also distinguishable.  In that case, the court found that "there was sufficient evidence to support a showing of misrepresentation: specifically, that Ford had flooded the market with the cars and that production had continued past the date they said it would stop."  This statement was a misrepresentation of the value of the car in the market, not the quality of its mechanics or performance.

heating degree days, but that he did inform Mr. Moffitt that he would need a vapor barrier if the humidity in the house was not kept below 35%.  Krywka stated that "heating degree days relate to the indoor humidity."  (Krywka Depo. at 46). Reviewing this evidence in the light most favorable to Krywka, the Court concludes there remains a material dispute about whether Krywka's statements were misrepresentations or omissions likely to deceive a reasonable consumer. Therefore, summary judgment is not appropriate.

     B. <u>Homeowners v. Contractor</u>

     The Moffitts and Krywka also dispute that the Moffitts are owners or contractors.  Although the parties have not made it clear why this distinction is material, Krywka argues that the distinction is relevant to his assumption of the risk and comparative negligence defenses.  The statutory definitions and common sense both suggest that the Moffitts are owners rather than contractors.  However, Krywka has provided expert testimony that the Moffitts were general contractors.  Therefore, resolving the ambiguity in favor of the non-moving party, there is a disputed question of material fact.

C.  <u>Implied Warranty of Merchantability</u>

The Moffitts argue that the conditions of the Moffitts'
house called for a vapor barrier, thereby making the
insulation defective as installed.  However, the conditions
necessitating a vapor barrier are in dispute.  The NAHB
study in 1994 recommended using a vapor barrier with Icynene
insulation in climates with more than 7,500 HDD.  This
recommendation, however, is not included in Icynene's 1997
training manual.  Icynene's 2000 training manual includes a
similar recommendation but in climates with more than 8,000
HDD.  According to Krywka, Icynene instructed that the NAHB
recommendation only applied under conditions of high
humidity.  The 2003 Icynene specifications sheet recommends
using a vapor barrier in climates with 7,500 or more HDD.
However, Icynene's Chief Engineer Gabe Farkas has
recommended using a vapor barrier in structures with an
unvented attic and humidity above 35% found in climates with
at least 9,000 HDD.  Resolving these ambiguities in favor of
Krywka, there is a disputed issue regarding the need for a
vapor barrier and, therefore, whether the Icynene insulation
was defective as installed.

D. Magnuson-Moss Warranty Act

As discussed above, liability under the MMWA is predicated on state warranty law.  There is a factual dispute regarding Krywka's liability for breach of the implied warranty of merchantability under Vermont's UCC. Accordingly, there is also a factual dispute regarding liability under the MMWA and summary judgment is not appropriate.

III.  Moffitts' Motion *in Limine* to Exclude Expert Testimony

Krywka has offered the opinion of William Savage as expert testimony.  Savage has 30 years of experience in the construction trade.  (Doc. 43, at 8).  Specifically, he was president of two companies each of which specialized in the restoration of structures damaged by fire, wind and/or water.  (Id.).  He is a member of the NAHB and is certified in structural drying and water restoration technology. (Id.).  Savage's report evaluated the Moffitts' conduct and concluded that they acted as general contractors.  (Id. at 6).  He based his opinion on (1) the Moffitts' depositions, (2) the deposition and letter report of the Moffitts' expert, Henri de Marne, and (3) his inspection of the property.  (Id.).  His report includes a list of the typical

responsibilities of a general contractor and a

subcontractor.  (Id. at 7). Savage was persuaded that the

Moffitts acted as general contractors because they (1) hired

an engineer, (2) obtained a permit, (3) hired an excavator,

(4) hired a plumber, (5) hired an electrician, (6) hired an

insulator, (7) scheduled and coordinated the entire project,

(8) did finish work on the interior that was coordinated

with the electrician and plumber, and (9) similarly

constructed two other buildings on the property.  (Id. at

6).

The Moffitts argue that Savage's opinion should be

excluded because it is a conclusion of law that is

inadmissible under Federal Rule of Evidence 702 (2) and (3).

Krywka argues that Savage's testimony is an admissible

opinion of trade customs that relates directly to their

assumption of the risk and comparative negligence defenses.

Rule 702 prescribes the conditions for admitting the

testimony of an expert witness.

> If scientific, technical, or other specialized
> knowledge will assist the trier of fact to
> understand the evidence or to determine a fact
> in issue, a witness qualified as an expert by
> knowledge, skill, experience, training, or
> education, may testify thereto in the form of
> an opinion or otherwise, if (1) the testimony
> is based upon sufficient facts or data, (2)

> the testimony is the product of reliable
> principles and methods, and (3) the witness
> has applied the principles and methods
> reliably to the facts of the case.

Fed. R. Evid. 702.  The essence of this rule is that expert testimony must "rest on a reliable foundation" and be "relevant to the task at hand."  Amorgianos v. National Railroad Passenger Corp., 303 F.3d 256, 265 (2d Cir. 2002) (quoting Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993)).  This rule applies equally to non-scientific, technical or specialized knowledge.  Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999).  It is well settled that the Rule 702 inquiry is flexible and "depends upon the particular circumstances of the particular case at issue." Kumho, 562 U.S. at 150; Amorgianos, 303 F.3d at 266.  The court has wide latitude in fulfilling its gatekeeping function under Rule 702.  Kumho, 562 U.S. at 142.

The Moffitts contend that Savage's opinion intrudes on a question of law reserved to the court.  They argue that his opinion states the legal rights and responsibilities that flow from being a general contractor.  However, Savage has not intruded on the Court's responsibility to explain the law or the factfinder's responsibility to apply the law to the facts.  United States v. Bilzerian, 926 F.2d 1285,

1294 (2d Cir. 1991).   Rather, Savage's opinion provides
helpful factual information about the roles and
responsibilities of those in the construction trade.
Testimony regarding the "ordinary practices of those engaged
in [a particular business] ... or concerning other trade
customs" is admissible "to enable the jury to evaluate the
conduct of the parties against the standards of ordinary
practice in the industry." Marx & Co., Inc. v. Diner's
Club, Inc., 550 F.2d 505, 509 (2d Cir. 1977).   Moreover, the
Moffitts claim to have significant knowledge and experience
in home construction.   The reasonableness of their conduct
based on that knowledge is relevant to Krywka's defenses.
Therefore, Savage's expert testimony is admissible.

## CONCLUSION

For the foregoing reasons, I recommend that Icynene's
motion for summary judgment (Doc. 46) be GRANTED in part and
DENIED in part.   Further, I recommend that the Moffitts'
motions for partial summary judgment on liability for
consumer fraud and breach of warranty (Doc. 41 and 44) be
DENIED.   I recommend that the Moffitts' motion for partial
summary judgment that they are "consumers" (Doc. 43) be
GRANTED but that they are "owners" be DENIED.   Lastly, I

recommend that the Moffitts' motion *in limine* (Doc. 43) be DENIED.

Dated at Burlington, in the District of Vermont, this 2nd day of December, 2005.

/s/ Jerome J. Niedermeier
Jerome J. Niedermeier
United States Magistrate Judge

Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify portions of the proposed findings, recommendations or report objections. Failure to file objections within the specified time waives the right to appeal the District Court's order. See Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(e).